# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

RONALD LEE CRAIG,

    Plaintiff,

v.      CIVIL ACTION NO.: CV612-080

BOBBY RAY SMITH,

    Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Ronald Craig ("Plaintiff"), who is currently incarcerated at Augusta State Medical Prison in Grovetown, Georgia, filed a cause of action contesting certain conditions of his confinement while he was housed at the Toombs County Detention Center in Lyons, Georgia. Defendant filed a Motion for Summary Judgment. Plaintiff filed an untimely Response. For the reasons which follow, Defendant's Motion should be **GRANTED**.

## STATEMENT OF THE CASE

Plaintiff alleges that a urologist determined that he needed surgery and that Defendant, the Toombs County Detention Center jail administrator, did not schedule that surgery. Plaintiff also alleges that Defendant placed him in isolation "to keep [him] from telephones" and at another point placed him in isolation "without provocation." (Doc. No. 1, pp. 5—6). Plaintiff alleges that his diabetes caused a foot condition and that Defendant "refused to assist [him] medically." (Id. at p. 5).

Defendant asserts that Plaintiff cannot sustain a cause of action against him. In addition, Defendant asserts that he is entitled to sovereign, qualified, and governmental immunity.

## **STANDARD OF REVIEW**

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp.2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322-23 (1986)). In determining

whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Co., Fla., 630 F.3d 1346, 1353 (11th Cir. 2011).

## DISCUSSION AND CITATION TO AUTHORITY

I.  **Deliberate Indifference Claim**

Defendant asserts that Plaintiff presents no evidence that Defendant was deliberately indifferent to his medical needs. Instead, Defendant alleges, the evidence shows that Plaintiff received medical care for all of his complaints. Defendant contends that healthcare professionals "repeatedly monitored Plaintiff's health and provided Plaintiff with quality medical care for his health issues[ ]", despite Plaintiff's "repeated refusals to take medications and general non-compliance as a patient[.]" (Doc. No. 26-1, p. 14). Defendant also contends that there is nothing indicating that Defendant's arrangement for Plaintiff's medical care failed to meet constitutional requirements.

Plaintiff alleges that there is no evidence that he refused treatment, as there are no refusal forms in the record. Plaintiff also alleges that Defendant's statement of material facts regarding medication is contradicted by his response to a grievance Plaintiff filed about being in pain. Plaintiff contends that two (2) medical professionals advised that he needed surgery.

The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon a prison official to take reasonable measures to guarantee the safety of inmates. The standard for cruel and unusual punishment, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is

3

whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate. Farmer v. Brennan, 511 U.S. 825, 828 (1994). However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105). Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).

In order to prove a deliberate indifference claim, a prisoner must overcome three obstacles. The prisoner must: 1) "satisfy the objective component by showing that [he] had a serious medical need"; 2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and 3) "show that the injury was caused by the defendant's wrongful conduct." Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). A medical need is serious if it "'has been diagnosed by a physician as *mandating* treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill, 40 F.3d at 1187) (emphasis supplied). As for the subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Under the subjective prong, an inmate "must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Goebert, 510 F.3d at 1327. It is legally insufficient to sustain a cause of action for deliberate indifference to serious medical needs simply because the inmate did not receive the medical attention he

AO 72A
(Rev. 8/82)

deemed appropriate. See Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (noting that a mere difference of opinion as to a prisoner's diagnosis or course of treatment does not support a claim under the Eighth Amendment).[1]

Defendant submitted evidence in support of his Motion, including the affidavit of Michael Wiggins, a family nurse practitioner. Mr. Wiggins declares that he provided medical care to Plaintiff on at least four (4) occasions from February 28 to May 21, 2012. (Doc. No. 26-5). On the first occasion, Mr. Wiggins placed Plaintiff on an 1800 calorie diet and gave him two (2) medications for his diabetes, another for Plaintiff's high blood pressure, and yet another medication for his seizure condition. (Id. at ¶¶ 5—6). A week later, Plaintiff complained about having a penile cyst, and Mr. Wiggins referred him to a urologist. Mr. Wiggins declares that Plaintiff "kept manipulating his cyst," so Mr. Wiggins gave him four (4) medications until the urologist could see him. (Id. at ¶ 7). On his last chronicled visit with Mr. Wiggins, Plaintiff complained about "scaly hard skin" on his right foot. (Id. at ¶ 10). Mr. Wiggins affies that Plaintiff was given six (6) medications, including one for his athlete's foot, and was placed on bed rest. (Id.). According to Mr. Wiggins, Plaintiff's complaints "stemmed from his athlete's foot and his noncompliance in taking his diabetes medications." (Id.).

---

[1] Plaintiff was a pre-trial detainee during the relevant time period. A claim that a pretrial detainee has been denied adequate medical care is properly addressable under the Due Process Clause of the Fourteenth Amendment. Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). The Eleventh Circuit Court of Appeals has held that "in regard to providing pretrial detainees with basic necessities as food, living space, and medical care the minimum standard allowed by the Due Process Clause is the same as that allowed by the Eighth Amendment for convicted persons." Hamm v. DeKalb Cnty., 774 F.2d 1567, 1574 (11th Cir. 1985). Because the Eleventh Circuit has held that the minimum standard for the provision of basic necessities, including medical care, is the same for convicted prisoners under the Eighth Amendment and for pretrial detainees under the Fourteenth Amendment, it is appropriate to examine Eighth and Fourteenth Amendment decisional law concerning Plaintiff's claim. See Lancaster v. Monroe Cnty., 116 F.3d 1419, 1425 n.6 (11th Cir. 1997) ("Because both Eighth Amendment cases and Fourteenth Amendment cases establish what constitutes 'deliberate indifference,' we will rely upon decisions in both types of cases.").

AO 72A
(Rev. 8/82)

Dr. Gilbert Gonzalez, a urologist, examined Plaintiff on March 12, 2012, at which time Plaintiff complained of an inclusion cyst on the foreskin of his penis. Dr. Gonzalez declares that the cyst was superficial, not into deeper tissues, consisted of what was most likely a hair follicle or clogged pore, and was not an emergent condition. (Doc. No. 26-3, ¶¶ 3—4, 6—7). Dr. Gonzalez recommended that Plaintiff have a circumcision at his earliest convenience "as time and circumstances allowed." (Id. at ¶ 8). Dr. Gonzalez noted that Plaintiff did not have an infection, his condition usually is not painful, medications were not needed, and surgery was not required. (Id. at ¶¶ 9—10).

The evidence of record reveals that Defendant was not deliberately indifferent to Plaintiff's medical needs, serious or otherwise. The copies of the grievances which Plaintiff submitted do not reveal a genuine dispute as to any fact material to Plaintiff's deliberate indifference claim. In fact, Plaintiff admits in one of these grievances that he had medical treatment three (3) times in less than a month. (Doc. No. 1, p. 9). The undersigned notes Plaintiff's assertion that, had he refused treatment, there would be refusal slips of record. The undersigned also notes Plaintiff's contention concerning whether surgery was recommended or required. Without splitting the hairs Plaintiff wishes for the Court to do, it is evident that Defendant ensured Plaintiff received medical care and treatment for his complaints and conditions. It is of no moment whether Plaintiff refused treatment or whether Dr. Gonzalez recommended Plaintiff have surgery.[2] Rather, the relevant inquiry is whether Defendant was aware of Plaintiff's complaints about his medical conditions and needs and was deliberately indifferent to those needs. Under this framework, there is no evidence before the Court

---

[2] It is worth noting that Dr. Gonzalez only *recommended* surgery and noted that this surgery could occur at Plaintiff's earliest convenience. Dr. Gonzalez did not opine that Plaintiff's condition was urgent or that he *required* surgery.

6

that Defendant was deliberately indifferent to Plaintiff's medical needs and conditions. As a matter of fact, Defendant ensured that Plaintiff received medical attention on no less than five (5) occasions in a three-month period. This portion of Defendant's Motion should be granted.

## II. Due Process Claim

Defendant avers that Plaintiff was isolated from the general population for two (2) legitimate reasons. The first reason was because of Plaintiff's diabetic condition. Defendant asserts that Plaintiff would refuse his medications, refuse to check his blood sugar, and would have low blood sugar episodes. Defendant also asserts that Plaintiff had limited mobility due to his foot pain. The second reason Plaintiff was placed in isolation was for his safety. According to Defendant, Plaintiff reported that other detainees made tattoo ink in the detention center and that, as a result, Plaintiff had "some strife" with his fellow detainees. (Doc. No. 26-1, p. 16).

Plaintiff asserts that he did not report any of his fellow detainees and wanted to be placed in the general population. Plaintiff contends that Defendant placed him in isolation "to promote his malicious maniacal inexplicable animosity(sic)." (Doc. No. 28, p. 5).

### A. Procedural Due Process[3]

An inmate states a cognizable claim for the deprivation of his procedural due process rights under the Fourteenth Amendment when he alleges the deprivation of a constitutionally protected liberty or property interest, state action, and constitutionally inadequate process. Shaarbay v. Palm Beach Co. Jail, 350 F. App'x 359, 361 (11th Cir.

---

[3] Plaintiff's Complaint was served based on his allegations of a violation of his right to due process. The undersigned addresses this alleged violation as a procedural due process claim and as a substantive due process claim out of an abundance of caution.

7

2009) (citing <u>Cryder v. Oxendine</u>, 24 F.3d 175, 177 (11th Cir. 1994)). Constitutionally adequate process requires compliance with the minimum due process protections accorded to an inmate in prison disciplinary proceedings: (1) the right to receive written notice of the charges against him at least 24 hours before his hearing; (2) the right to call witnesses and present documentary evidence, where doing so would not be unduly hazardous to institutional safety or correctional goals; and (3) the right to receive a written statement setting forth the disciplinary committee's findings of fact. <u>Asad v. Crosby</u>, 158 F. App'x 166, 173 (11th Cir. 2005) (citing <u>Wolff v. McDonnell</u>, 418 U.S. 539, 563-66 (1974)).

Because Plaintiff was not placed in punitive segregation and was not charged with any infraction, there was no attendant duty, under due process principles, to notify him of any charges or reasons for his placement in segregation. As a matter of law, Plaintiff's procedural due process claim should be dismissed. The undersigned notes Plaintiff's citations to certain documents, such as certain grievances and discovery responses; however, these documents are not contained in the record. Even if these documents were of record, there is nothing indicating a genuine dispute as to any fact material to this portion of Plaintiff's due process claim. This portion of Defendant's Motion should be granted.

B.   **Substantive Due Process**

"The Due Process Clause protects against deprivations of 'life, liberty, or property without due process of law.'" <u>Kirby v. Siegelman</u>, 195 F.3d 1285, 1290 (11th Cir. 1999) (quoting U.S. CONST. AMEND. XIV). The Supreme Court has identified two situations in which a prisoner can be deprived of liberty such that the protection of due

8

process is required: (1) there is a change in the prisoner's conditions of confinement so severe that it essentially exceeds the sentence imposed by the court; and (2) the State has consistently given a benefit to prisoners, usually through a statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 1290-91 (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

In Sandin, the United States Supreme Court addressed whether the punishment inmate Conner received for a disciplinary violation was sufficient to invoke a liberty interest protected by the Due Process Clause. 515 U.S. at 472. Following a disciplinary conviction, Conner received 30 days' disciplinary segregation in a Special Housing Unit. Id. at 475. After noting that the segregation was a form of punishment, the Court concluded that it was not a dramatic departure from the conditions of Conner's indeterminate sentence. Id. at 485. The Court determined that the conditions of disciplinary segregation at the prison where Conner was incarcerated were virtually indistinguishable from the conditions of administrative segregation and protective custody. Id. at 486. Also, the Court noted that the conditions of disciplinary segregation were not markedly different from the conditions in general population. Id. The Court concluded that the conditions of disciplinary segregation did not impose an "atypical, significant deprivation in which a State might conceivably create a liberty interest." Id. Thus, the Court determined that Conner was not entitled to due process protection. Id. at 487.

The evidence before the Court reveals that Plaintiff makes no assertion that the conditions of his confinement in administrative segregation were substantially different

9

from those conditions for detainees housed in the general population. In short, Plaintiff fails to create a genuine dispute that the conditions of administrative segregation imposed an "atypical, significant deprivation in which a State might conceivably create a liberty interest." Sandin, 515 U.S. at 486. Accordingly, this portion of Defendant's Motion should be granted.

It is unnecessary to address the remaining portions of Defendant's Motion.

### CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendant's Motion for Summary Judgment be **GRANTED**. It is also my **RECOMMENDATION** that Plaintiff's Complaint be **DISMISSED**.

**SO REPORTED** and **RECOMMENDED**, this 3rd day of September, 2013.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)